In the Matter of:

Olivia Marie, Inc.
dba Italmoda Furniture,

Bankruptcy Case No. 09-65896
Honorable Phillip J. Shefferly
Chapter 11

Debtor.

_____/

# REORGANIZATION PLAN

## OF

## OLIVIA MARIE, INC.
## DBA ITALMODA FURNITURE

### Dated: February 9, 2010

### DEBTOR SUBMITS THAT THIS PLAN PROVIDES ADEQUATE INFORMATION PURSUANT TO 11 U.S.C. § 1125(F)(1); THEREFORE, A SEPARATE DISCLOSURE STATEMENT IS NOT NECESSARY

Prepared By:

STEVENSON & BULLOCK, P.L.C.
Charles D. Bullock (P55550)
Sonya N. Goll (P61136)
Attorneys for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
(248) 354-7906 X 2224

# I. PLAN OF REORGANIZATION

NOW COMES Olivia Marie, Inc., DBA Italmoda Furniture ("Debtor" or "Olivia") and in accordance with the United States Bankruptcy Code, hereby proposes and files its Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code as follows:

## ARTICLE I
## DEFINITIONS

As used in this Plan, the following terms shall have the meanings specified below:

**SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION:** For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise assigned shall have the meaning ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules (as defined below) shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine.

Allowed Claim shall mean a Claim (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by F.R. Bankr. P. 3001-3005 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007 and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been raised within any applicable period of limitation or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

Allowed Interest shall mean an Interest, (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by F.R. Bankr. P. 3001-3005, or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007, and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been raised with any applicable period of limitation, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

Allowed Secured Claim or Allowed Secured Interest shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest, or which is subject to set off under 11 U.S.C. § 553, to the extent of the value (determined in accordance with 11 U.S.C. § 506(a)) of the interest of the holder of such Allowed Claim in the Debtors' interest in such property or to the extent of the amount subject to such set off, as the case may be.

Allowed Unsecured Claim or Allowed General Unsecured Claims or Allowed Unsecured Interest shall mean the Allowed Claim of a creditor for goods or services to Debtor before Debtor filed this Chapter 11 case, which is not secured by lien, security interest or other charge against property of the estate, or subject to set off pursuant to 11 U.S.C. §553. This definition may include under-secured claims. This definition shall not include tax claims given priority status and treatment.

Bankruptcy Code shall mean the United States Bankruptcy Code, 11 U.S.C. §101, et.seq., and any amendments thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court for the Eastern District of Michigan, and any court having jurisdiction over any appeals.

3

Bankruptcy Rules or Rules shall mean the Federal Rules of bankruptcy Procedure, as promulgated by the United States Supreme Court that became effective on August 1, 1991 and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the United States District Court for the Eastern District of Michigan, as amended, and the Local Bankruptcy Rules for the Eastern District of Michigan.

Case shall mean the case currently pending before the Bankruptcy Court titled *Olivia Marie, Inc. DBA Italmoda Furniture.* (Bankruptcy Case No. 09-65896).

Claim shall have the meaning as set forth in 11 U.S.C. § 101 and include any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

Class shall mean any class into which Allowed Claims are classified.

Code shall mean the United States Bankruptcy Code, 11 U.S.C. §101, et.seq., and any amendments thereto.

Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

Confirmation Hearing shall mean the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by Debtor.

Confirmation Order or Order of Confirmation shall mean the order confirming this Plan by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 of the Code.

Court shall mean the United States Bankruptcy Court for the State, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings relating thereto.

4

Creditor shall mean any person, entity or its assignee that holds a Claim against Debtor for debts, liabilities, or demand of whatever kind or character which arose prior to the Petition Date.

Debtor shall mean Olivia Marie, Inc., DBA Italmoda Furniture as the debtor in this case and as the Reorganized Debtor.

Debtor-In-Possession shall mean the debtor who has managed and operated its business since the Petition Date.

Effective Date shall be that date upon which the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code becomes final and non-appealable, or in the event of appeal, such date as the Court may set pursuant to a motion for stay of proceedings, which Debtor shall be required to file and prosecute.

Final Order shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

Impaired shall mean a Claim treated under this Plan, unless the Plan:

(a) leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

(b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default—

(1) cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

5

(2)     reinstates the maturity of such Claim or Interest as such maturity existed before such default;

(3)     compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(4)     does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

Insider shall mean a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of the Debtor or a corporation or entity in which an Insider (as defined herein) of Debtor is an Insider.

Interest shall mean an equity interest in Debtor as defined in §101(16) of the Code.

New Value shall mean the amount of money bid for the interests in the event that an auction is required pursuant to the Plan.

Person or Persons shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

Petition Date shall mean the date on which Debtor filed a voluntary Chapter 11 Petition, August 20, 2009.

Plan shall mean this Chapter 11 Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

Pro Rata shall mean proportionately or according to a certain rate percentage or proportion based upon the whole of Allowed Claims in any given Class.

Reorganized Debtor shall mean the debtor after the Effective Date. Furthermore, to the extent the Debtor is referenced in a post-confirmation capacity, Debtor shall have the same meaning as the Reorganized Debtor.

Rules shall mean the Bankruptcy Rules and the local Bankruptcy Rules as adopted by the Court.

Secured Claim shall mean a Claim that is secured by a Lien but only to the extent that such assets are of a value sufficient to secure such Lien in whole or in part, pursuant to Section 506 of the Code.

Unsecured Claim shall mean a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

Unsecured Creditor shall mean any Creditor that holds an Unsecured Claim.

## ARTICLE II
## ADMINISTRATIVE CREDITORS

The administrative expenses of Debtor's Chapter 11 case allowed pursuant to 11 U.S.C. § 503(b) shall be paid in full on or before the Effective Date unless otherwise ordered by the Court or upon such other terms as may be agreed upon by the holder of such allowed expense or Allowed Claim and Debtor. Where required by the Code and upon approval by the Court, Debtor shall pay all administrative expenses on a current basis.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTEREST

Each priority creditor which has filed a valid priority claim shall be separately classified in accordance with 11 U.S.C. § 507.

A. NON-VOTING CLAIMANTS:

Administrative Claims. This class will consist of Debtor's attorneys, accountants, and the Office of the U.S. Trustee for any remaining fees and costs.

B. VOTING CLASSES:

Voting Class I, II and III. All creditors that have a perfected security interest in the assets of the Debtor's Estate, as more particularly described in 11 U.S.C. §506(a).

Voting Class IV- Allowed Unsecured Claims. All allowed unsecured claims of every nature and kind including, but not limited to, claims arising out of the rejection of executory contracts and all claims resulting from an under-secured (deficiency) status and all other general creditors.

Voting Class V- Class of Equity Interest Holders.

## C. CLASSIFICATION OF CLAIMS, INTEREST, AND TREATMENT

Administrative Claims. The administrative claims are delineated as follows:

1. Stevenson and Bullock, P.L.C., the attorneys for Debtor, will have an administrative claim approximating $40,000.00, subject to Court approval.

2. Sal Shimoun, the accountants for Debtor, will have an administrative claim approximating $8,000.00, subject to Court approval.

3. The United States Trustee's Office will have an administrative claim for any unpaid fees due and owing through the course of administration. The Reorganized Debtor is obligated to pay quarterly fees to the United States Trustee until the Chapter 11 Case has been converted, dismissed or closed by the Court, pursuant to 28 U.S.C. § 1930(a)(6).

The unpaid and allowed administrative claims shall be paid pursuant to the United States Bankruptcy Code, that is, within fourteen (14) days of confirmation, unless the administrative claimants agree to differing treatment with the debtor. Upon the failure of the Reorganized Debtor to make any payment due on an administrative claim which is not cured within fourteen (14) days of the mailing of a written notice of default by the creditor, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim

and/or seek appropriate relief in this Court, (including, without limitation, this Court issuing a writ incident to any Order awarding fees and/or expenses).

### Voting Class I – Secured Claim of Capital for Merchants

Voting Class I shall consist of the Allowed Secured Claims of Capital for Merchants relating to consensual security interests granted by Debtor. The allowed secured claims of Capital for Merchants in the amount of $56,000.00, less any payment previously paid, shall be paid in full within sixteen (16) month of the Effective Date with accrued interest at 5.0% annually, beginning on the Effective Date, and accruing interest until paid in full. Payments shall be in equal monthly installments of $3,500.00 until paid in full.

The Creditor possessing a Class I claim shall retain lien rights pursuant to 11 U.S.C. §1129(b)(2).

**This class shall be impaired.**

### Voting Class II – Secured Claim of Oakland County Treasurer

Voting Class II shall consist of the Allowed Secured Claims of the Oakland County Treasurer. The allowed secured claims of the Oakland County Treasurer in the amount of $617.64 shall be paid in full within twelve (12) months of the Effective Date with accrued interest at 12.0% annually, beginning on the Effective Date, and accruing interest until paid in full. Payments shall be in equal monthly installments of $57.65 to Oakland County Treasurer until paid in full.

The Creditor possessing a Class II claim shall retain lien rights pursuant to 11 U.S.C. §1129(b)(2).

**This class shall be impaired.**

## Voting Class III – Secured Claim of the State of Michigan

Voting Class III shall consist of the Allowed Secured Claims of the State of Michigan. The allowed secured claims of the State of Michigan in the amount of $43,423.46 shall be paid in full within thirty six (36) months of the Effective Date with accrued interest at 5.0% annually, beginning on the Effective Date, and accruing interest until paid in full. Payments shall be in equal monthly installments of $1,293.65 to State of Michigan until paid in full.

The Creditor possessing Class III claims shall retain lien rights pursuant to 11 U.S.C. §1129(b)(2).

**This class shall be impaired.**

## Voting Class IV– Allowed Unsecured Creditors.

Creditors in Voting Class IV are those creditors possessing allowed unsecured claims. Claimants in this class shall consist of those claimants possessing allowed claims.

A creditor in this class shall receive a pro rata distribution incident to its allowed general unsecured claim based on semi-annual payments by Debtor totaling $8,916.12 in 2010 ($8,916.12 on or before October 31st ), $8,916.12 in 2011 ($4,458.06 on or before April 30th and $4,458.06 on or before October 31st ), $8,916.12 in 2012 ($4,458.06 on or before April 30th and $4,458.06 on or before October 31st ), $8,916.12 in 2013 ($4,458.06 on or before April 30th and $4,458.06 on or before October 31st ), and $8,916.12 in 2014 ($4,458.06 on or before April 30th and $4,458.06 on or before October 31st ). The first payment shall be due on or before October 31, 2010 and the remaining payments due on April 30th and October 31st of each year thereafter for a total of ten (10) semi-annual payments. Interest shall not accrue on the Allowed Unsecured Claims.

**This class shall be impaired.**

## Voting Class V – Class of Equity Interest Holders

The claims of Class V shall consist of the Interests of the equity security holders whose Interests shall be treated in one of two alternative methods:

(1)     If the impaired class of general unsecured claims votes to accept the Plan, then the rights of the equity interest holders shall remain the same. **This Class shall not be Impaired**.

(2)     If the impaired class of general unsecured claims votes to reject the Plan or if the United States Bankruptcy Court requires, for any reason, that New Value be provided to the debtor, the interests of the equity interest holders shall be cancelled and new units (membership interests) shall be reissued to the equity interest holders upon the investment by the equity interest holders of New Value. **This Class shall be Impaired**

### ARTICLE IV
### EVENTS OF DEFAULT

The occurrence of any of the following shall constitute an event of default under the Plan

(a) Failure to make any of the payments as provided for, pursuant to the Plan, or the breach of any terms, conditions or covenants of the Plan.

(b) Debtor shall file or have filed against them any voluntary or involuntary petition under the Bankruptcy Code of the United States (excluding the petition herein) or any state insolvency statute; unless, as to involuntary petition, it is dismissed within 120 days.

(c) The entry of any final judgment resulting in any lien, levy, or execution against the assets of Debtor, which is not either: 1) paid within 120 days, or 2) the enforcement thereof stayed, or 3) appealed within the appeal period.

## ARTICLE V
## EXECUTORY CONTRACTS AND LEASES

Debtor is the lessee of a 2006 Lexus GS300, Vin number JTHCH96S160001653. Toyota Motor Credit Corporation is the lessor. This unexpired lease shall be rejected.

Debtor is a month to month tenant at 32968 Woodward, Royal Oak, Michigan. The landlord is Lou Basco. The monthly rent is $5,133.00. Debtor shall remain a month to month tenant, subject to a lease being executed post-confirmation; however, no lease will be executed which would impair the ability of the Debtor to meet its obligations under the Plan

All other executory contracts and unexpired leases, not assumed, are hereby rejected.

## ARTICLE VI
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of the case until the Plan has been fully consummated for the purposes set forth below:

    a.    To allow and disallow claims not allowed or disallowed prior to confirmation.

    b.    To hear and determine any controversy pending as of the date of confirmation before this Court and for the purpose of granting any Injunction or any other relief (including damage awards) as may be necessary or desirable to effectuate the purposes of the Plan.

    c.    To estimate claims pursuant to 11 U.S.C. §502(c), enter final orders on objections to claims and to determine the validity, priority, or extent of a lien or other interest in property under F.R.Bankr. P. 7001.

    d.    If requested by any interested party, to enter Orders allowing compensation to persons so entitled to receive compensation pursuant to the Bankruptcy Code.

    e.    To modify the Plan pursuant to provisions of 11 U.S.C. §1127.

    f.    For such other matters as may be set forth in the Order of Confirmation.

g.     In the event an appeal is perfected from the Order Confirming Plan, to enter such Orders regarding the disbursement of funds under the Plan or other matters as may be necessary to protect the interests of the Reorganized Debtor and creditors.

h.     The classification of the claim of any creditor and the re-examination of the claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to a creditor's Claim. The failure of Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine the Claim in whole or in part.

i.     The determination or allowance of compensation to those persons so entitled to receive compensation for services rendered prior to the Confirmation Date pursuant to the Bankruptcy Code.

j.     The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, claims, controversies, disputes or conflicts, whether or not subject to an action pending as of the Confirmation Date, between Debtor and any other party.

k.     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the order of confirmation as may be necessary to carry out the purposes and intent of the Plan.

l.     The enforcement and interpretation of the terms and conditions of this Plan.

m.     The entry of any order, including injunctions, necessary to enforce the title, rights and powers of Debtor, Reorganized Debtor and any creditor.

n.     Determination of whether a default has occurred under this Plan, and the making of such orders as the Court deems necessary to enforce the provisions of this Plan, including, but not limited to, ordering a modification of the Plan, and ordering the conversion of this Chapter 11 proceeding to a Chapter 7 proceeding.

o.    To hear and determine controversies brought under Chapter 5 of the Bankruptcy Code, including preference and fraudulent conveyances, and such claims arising pre-petition/pre-confirmation of which Debtor has retained standing post-confirmation.  It is specifically understood that Debtor and Reorganized Debtor has retained all claims, whether known or unknown, under Chapter 5 of the Bankruptcy Code, including preference and fraudulent conveyances, and all other core or non-core claims arising pre-petition/pre-confirmation.

p.    To hear any adversary proceedings pursued under F.R. Bankr. P. 7001(1) – (10).

q.    To enter a final decree closing the Case.

## ARTICLE VII
## VESTING OF PROPERTY AND RESERVATION OF RIGHTS

Debtor shall be vested with title to all property of the estate and all claims or causes of action existing pre-petition under non-bankruptcy law or arising under the United States Bankruptcy Code in favor of Debtor.  Debtor may sell, obtain financing or encumber property, without prior order of the Court, after the Effective Date.

Debtor reserves the right to institute litigation or pursue claims (or rights in an administrative or appellate proceeding) arising pre-petition/pre-confirmation or post-confirmation. The aforementioned blanket reservation claims set forth by Debtor should not be construed to limit any potential causes of action arising pre-petition/pre-confirmation which Debtor may bring post-confirmation against the listed parties or any other party.

## ARTICLE VIII
## MODIFICATION OF PLAN

Modifications of the Plan may be proposed in writing by Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of 11 U.S.C. §§ 1122 and 1123 and Debtor shall have complied with 11 U.S.C. §1125.

Debtor may modify the Plan at any time after confirmation and before its substantial consummation, provided that such Plan, as modified, meets the requirements of 11 U.S.C.

14

§§1122 and 1123 and the Court, after notice and a hearing, confirms such Plan as modified, under 11 U.S.C. §1129, and the circumstances warrant such modification

A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE IX
## EFFECTIVE DATE OF PLAN

a.     This Plan shall be effective on the fifteenth (15th) day after the date of the Order confirming the Plan; provided, however, that no stay pending appeal of the Order of Confirmation has been granted. In the event such an appeal is filed and stay granted, this Plan shall be effective as of the date the Order of Confirmation becomes final and binding on all parties. Should an appeal be taken in this case, Debtor shall be required to seek a stay pending appeal.

b.     Confirmation of the Plan will make the Plan binding upon the Debtor, Creditors and other parties in interest, regardless of whether they have accepted the Plan. Such Creditors will be prohibited from receiving payment from or seeking recourse against Debtor or its assets, except as expressly provided in the Plan or the confirmation order. In addition, confirmation of the Plan will enjoin such parties from pursuing any claim, liability, interest or right that arose prior to the Confirmation Date. Confirmation of the Plan will also operate as a discharge of all claims against and interests in the Debtor as set forth in 11 U.S.C. §1141(d) of the United States Bankruptcy Code, except as otherwise provided in the Plan.

c.     On the Effective Date, confirmation of this Plan shall also constitute a waiver, complete satisfaction, settlement, discharge and release of all Claims of all Creditors and the holders of all Interests against the Debtor and Reorganized Debtor. Creditors or holders of Interests shall be prohibited from asserting any further claims against the Debtor and

Reorganized Debtor or any property of the Debtor and Reorganized Debtor based upon the act, transaction or indebtedness which is the subject matter of any Claim or Interest, or based upon any guarantee of collection, payment or otherwise made by the Debtor as to any obligation of any persons, firm or entity.

## ARTICLE X
## COSTS AND EXPENSES INCURRED AND UNPAID, OBLIGATIONS OF THE DEBTOR IN POSSESSION

Debtor shall assume and agree to pay in the ordinary course of business, when due, all obligations of the Debtors-in-Possession, as set forth in this Plan. Debtor shall pay all the costs and expenses of this Reorganization as allowed by the Court upon entry of the appropriate Order so allowing said costs and expenses.

## ARTICLE XI
## UNITED STATES TRUSTEE FEES

All United States Trustee fees due at the time of confirmation of this Plan shall be paid within fourteen (14) days of confirmation. Debtor shall pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. §1930(a)(6).

After confirmation, and until the Case is closed by the Court, Debtor and the Reorganized Debtor shall pay all post-confirmation fees on all disbursements of the Debtor and the Reorganized Debtor, and shall follow all procedures of the United States Trustee for reporting and tracking such disbursements.

## ARTICLE XII
## MEANS FOR EXECUTION OF PLAN

**Funding of the Plan:** Debtor reasonably believes that its future operations will generate sufficient funds to satisfy its obligations under the Plan.

**Refinancing:** If necessary, the Reorganized Debtor may, in its sole discretion, seek to obtain refinancing from either a lending institution or from other personal sources in an effort to

16

satisfy the necessary cash payments described in this Plan. In the event that the Reorganized Debtor obtains such financing, it shall not obligate the Reorganized Debtor to accelerate any of the payments or obligations set forth in this Plan.

**Auction:**

If Class IV Allowed Unsecured Claims vote to accept the Plan, then the Debtor shall fund the obligations of the Plan from its operations.

If Class IV Allowed Unsecured Claims vote to reject the Plan, then Debtor will proceed with an auction of the Interests of the Reorganized Debtor on the first Business Day before the Confirmation Hearing at 10:00 a.m., which may be adjourned by the Court or Debtor. The auction of the Interests shall occur at the offices of Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034. If the Plan is subsequently accepted by Class IV then the auction shall be cancelled.

The following terms and conditions shall apply to Debtor's consideration of any offer to be made at the auction:

1.  Any Creditor in this Case or other party, including any Interest holder of Debtor, who wishes to make a cash offer for all of the Interests in the Reorganized Debtor, shall notify the Debtor's counsel at Stevenson & Bullock, P.L.C., Attention: Charles D. Bullock, 26100 American Drive, Suite 500, Southfield, MI, in writing of its intent to make an offer no later than two Business Days prior to the date of the auction. At the time of giving such notice, such party or parties, excluding any Interest holder, shall tender a certified or cashier's check in the amount of $10,000.00, which amount shall be held by the Debtor's counsel in escrow as a deposit.

2.  Such deposit shall be immediately refunded to any party, including any Interest holder, which shall not be the successful bidder for the Interest. The failure to give the required notice, or failure to provide the foregoing deposit shall constitute a waiver by any party in interest or the Interest holder of its right to bid at the auction.

3.  The Debtor reserves the right, in its reasonable business judgment, to set such other terms of conditions of bidding (provided that such terms and conditions are provided to all bidders prior to the commencement of auction), at the auction.

17

4.   Except for provided herein, all bids must be for cash in the currency of the United States of America. No credit bids shall be permitted.

5.   At the conclusion of the bidding, if any, Debtor shall announce the successful bid.

**Pre-payment**: The Reorganized Debtor may, but shall not be obligated to, pre-pay any of the claims set forth in Article I, II, III or IV at any time in its sole, absolute and unfettered discretion. If the Reorganized Debtor elects to pre-pay any obligation, it shall not incur any pre-payment penalty, any such pre-payment penalty contained in any pre-petition contract, agreement or document shall not apply.

## ARTICLE XIII
## PAYMENT COMMENCEMENT

All payments due hereunder, unless otherwise stated, shall commence sixty (60) days after the Effective Date.

## ARTICLE XIV
## RESERVATION OF CLAIM OBJECTION RIGHTS

Debtor herein reserves the right to object to any filed claim for a period of sixty (60) days from the Effective Date.

## ARTICLE XV
## MANDATORY RETIREE PROVISION

Debtor has no retiree benefit plans which must comport with 11 U.S.C. §1129(13).

## ARTICLE XVI

a.   **Change of Address**: In order to ensure that it receives its distribution, each Creditor holding a Claim treated under any Class must advise the Reorganized Debtor of any change in address in writing. Absent any such notification, the Reorganized Debtor will send payments to the addressed listed on the Matrix or the most recent Proof of Claim on file with the

Bankruptcy Court. If the Reorganized Debtor does not receive notice of any change of address, it shall be under no obligation to pay the amounts due under the Plan.

b.      In the event the holder of any Claim shall transfer such Claim after the Confirmation Date, it shall immediately advise the Debtor and Debtor's Counsel, in writing, of such transfer and the aforementioned parties shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until it shall have received written notice of such transfer. Each transferee of any claim shall take such claim subject to the provisions of the Plan and any requests made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in the notice, Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

c.      The rights and obligations of any entity or person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity or person.

d.      The making and delivery of any instruments of transfer to or from Debtor pursuant to this Plan, including deeds and articles of transfer shall not be taxed under any law imposing a stamp, as provided in 11 U.S.C. §1146(c).

e.      Any services performed or expenses incurred by any professional on behalf of the Reorganized Debtor with respect to this Case or the Reorganized Debtor after the Confirmation Date, shall not be subject to the prior review and approval of the Court. After the Confirmation Date, no professional shall be required to disclose payments from the Reorganized Debtor to the Court or the United States Trustee. All fees and expenses arising after the Confirmation Date shall be billed directly to the Reorganized Debtor.

f.      A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of the class and is classified in a different class

09-65896-pjs   Doc 91   Filed 02/09/10   Entered 02/09/10 17:38:04   Page 19 of 70

to the extent the Claim or Interest qualifies within the description of that different class. If a Claim or Interest is acquired or transferred, the Claim or Interest will be placed in the class in which it would have been placed if it were owned or held by the original claimant or holder.

g.    Except to the extent that the United States Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan.

h.    Unless otherwise instructed in writing, Notices to the Reorganized Debtor under this Plan shall be mailed and e-mailed as follows:

| | |
|---|---|
| Counsel for the Reorganized Debtor: | Stevenson & Bullock, P.L.C., Attn: Charles D. Bullock, P.L.C. 26100 American Drive., Suite 500 Southfield, MI 48034 cbullock@sbplclaw.com |
| Reorganized Debtor: | Olivia Marie, Inc. Attn: Richard Gorges 32968 Woodward Royal Oak, MI 48073 |

## II.    HISTORY AND DESCRIPTION OF DEBTOR'S BUSINESS

On August 20, 2009 Olivia Marie, Inc. ("Debtor" or "Olivia") filed a Petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division ("the Court"), Bankruptcy Case No. 09-65896. The case was assigned to the Honorable Phillip J. Shefferly.

Upon filing the Petition, Debtor became a "debtor-in-possession" as that term is defined in the Code. Debtor is represented by Charles D. Bullock and the firm of Stevenson & Bullock, P.L.C.. Olivia is a "debtor" within the definition of 11 U.S.C. §101(13).

Debtor's Case has not had an appointment of an Official Unsecured Creditor's Committee.

## A. Description of the debtor

Debtor was formed as a Michigan Domestic Profit Corporation on February 8, 2002.

Debtor currently operates from one (1) location in Michigan. There are approximately three (3) full time employees.

Debtor is reorganizing and intends to continue operating.

Debtor does not intend on liquidating its assets outside of the ordinary course of business.

## B. Description of the principals

Richard Gorges is the Chief Restructuring Officer of the debtor. He is the responsible person for purposes of the underlying bankruptcy case. His salary is anticipated to be approximately $48,000.00 per year and, additionally, will be based upon the profitability of the debtor; however, no bonuses or salaries will be paid which would impair the ability of the Debtor to meet its obligations under the Plan. He has no other fringe benefits. Debtor's estimated gross revenue is disclosed on Debtor's Financial Forecasts attached as **Exhibit D**.

After the effective date of the order confirming the Plan, Richard Gorges shall retain the right to manage the day to day operation of Debtor's business, subject to his resignation or removal. Included in this right is the exclusive authority to commence litigation, settle and otherwise resolve any and all matters within his reasonable business judgment.

Wamidh Bahoora owns one hundred percent (100%) of the issued and outstanding stock of the debtor.

There are no other known legal relationships between any principal and Debtor.

Prior to the date on which the bankruptcy petition was filed, Wamidh Bahoora managed the debtor.

## C. Description of debtor's business, its industry group and the cause for the Chapter 11 filing

Debtor is engaged in the luxury furniture sale business. Debtor currently operates from one (1) location in Michigan.

21

The bankruptcy case arises from gross mismanagement of the underlying business by Wamidh Bahoora.

## D. Insider Transactions

Debtor does not believe there are any insider transactions.

## III. POST-PETITION EVENTS OF SIGNIFIGANCE

Since the filing of the Chapter 11 Petition the following events and matters have occurred: (1) the employment of Charles D. Bullock and the firm Stevenson & Bullock, P.L.C. was obtained by the Court; (2) Richard Gorges was employed as Chief Restructuring Officer for Debtor.

## A. Transfers Post-Petition

There have been no post-petition transfers, since the filing of the Petition (outside of the ordinary course of business).

## B. Adequate Protection or Regular Monthly Payments

Debtor has made regular monthly payments on all finance agreements and leases which have not been rejected. There is no cash collateral agreement.

## C. Cash Collateral or Financing Orders

The Order Authorizing Debtor's Use of Cash Collateral, Granting Replacement Liens, and Ordering Other Relief was entered on September 1, 2009.

## D. Litigation

There is currently no ongoing litigation.

Debtor has not yet completed its investigation with regard to prepetition transactions. If a payment or other transfer was made within ninety (90) days of the bankruptcy, or other transfer avoidable under the Code, the debtor may seek to avoid such transfer. Debtor reserves the right to collect all accounts receivable and all other amounts due Debtor for any reason whatsoever. Debtor reserve the right to commence avoidance actions pursuant to 11 U.S.C. §§ 544, 545, 547,

22

548, 549 and 550. Accordingly, Debtor has a potential cause of action and reserve the right to bring a lawsuit against any entity listed on Debtors' Schedules, Statement of Financial Affairs, Matrix (as filed with the Bankruptcy Court) or having filed a claim with the Court.

Debtors reserve the right to object to any claim filed in this case, and to raise any applicable counter-claim or cross-claim in relation thereto.

E. Claims Objection

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the debtor reserves the right to object to claims; therefore, even if a claim is allowed for voting purposes, one may not be entitled to a distribution if an objection to such claim is later upheld.

## IV.    LIQUIDATION ANALYSIS

A.    Debtor's Liquidation Analysis and Summary of Claims are attached as **Exhibit A.**
**Exhibit A shows the payments to be made under the plan by class and type of payment.**

B.    In the event the Plan is not accepted by the Creditors or is not otherwise confirmed by the Court, Debtor believes that its assets would be liquidated consistent with Chapter 7 of the Code. The values placed in the Liquidation Analysis are Debtor's best estimates of the value as of the time of the filing of the Plan a determined by Debtor. These values may differ from values placed on property at the time of the filing of the Petition for Relief and the Schedules. Debtor believes that the Plan is fair and equitable to creditors and it is in the best interest of creditors to consider a vote in favor of the Debtor's Plan.

C.    There is currently no ongoing litigation. Debtor is exploring the possibility of bringing causes of action against Olivia Limousine Detroit.

Debtor has not yet completed its investigation with regard to prepetition transactions. If a payment or other transfer was made within ninety (90) days of the bankruptcy, or other

23

transfer avoidable under the Code, the debtor may seek to avoid such transfer. Debtor reserves the right to collect all accounts receivable and all other amounts due Debtor for any reason whatsoever. Debtor reserve the right to commence avoidance actions pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549 and 550. Accordingly, Debtor has a potential cause of action and reserve the right to bring a lawsuit against any entity listed on Debtors' Schedules, Statement of Financial Affairs, Matrix (as filed with the Bankruptcy Court) or having filed a claim with the Court.

Debtors reserve the right to object to any claim filed in this case, and to raise any applicable counter-claim or cross-claim in relation thereto.

D.      It is believed that Wamidh Bahoora guaranteed the claim of Capital for Merchants.

## V.      SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

As required by the Code, the Plan places claims and equity interest in various classes and describes treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, recovery will be limited to the amount provided by the Plan.

Debtor's estimated gross revenue is disclosed on Debtor's Financial Forecasts attached as **Exhibit D**.

## PRIORITY CLAIMS

Priority claims are those claims entitled to payment under the provisions of the Bankruptcy Code as set forth in 11 U.S.C. §507.

A.      Administrative Expenses

Administrative expenses are cost or expenses of administering the debtor's chapter 11 case which are allowed under 11 U.S.C. §507(a)(2) of the Code. Administrative expenses are costs or expenses of administering the debtor's chapter 11 case which are allowed under §

507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the debtor in the ordinary course of business and received within twenty (20) days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

It is anticipated that these claims will consist of the following:

| Entity | Amount | Priority Statute |
|---|---|---|
| Stevenson & Bullock, PLC | $40,000.00 (approx.) | 11 U.S.C. §507(a)(2) |
| Sal Shimoun | $8,000.00 (approx.) | 11 U.S.C. §507(a)(2) |
| Office of the United States Trustee | $9,750.00(approx.) | 11 U.S.C. §507(a)(2) |

### B. Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief. The State of Michigan possesses a priority claim in the approximate amount of $51,491.47. The Internal Revenue Service possesses a priority claim in the approximate amount of $27,654.96. Priority tax claims shall be paid in equal monthly installments of $1152.74 to the State of Michigan and $619.47 the Internal Revenue Service over fifty (50) month from the Effective Date.

### C. Priority Security Deposit Claims

Priority customer deposit claims are unsecured deposits described by §507(a)(7) of the Code. The following possess priority claims in the approximate total amount of $94,604.84: Alan Schuange $6,500.00; Antonio Diaz-Lopez $3,000.00; Asma Siddique $1,800.00; Batbora Brown $3,500.00; Brett Kotlus $1,956.00; Daniel Nicholls $1,865.50; David Fireburg $4,500.00; Dharmani (Sheela) $480.00; Gail Ross $6,950.00; Hassane Shuayto $100.00; Howard Schwartz

$4,620.00; Joe Campanelli $200.00; John Leonetti $ 3,000.00; Jonathan Rye $6,000.00; Judith Perking $1,005.66; Karen Barker $300.00; Katherine Dukhan $4,000.00; Kathy Hall $ 3,800.00; Kevin & Rebecca Harvey $1,962.00; Liliana Nicoghosian $1,000.00; Marwan M. Kazimi $1,917.90; Maureen Van Dine $1,650.00; Michelle Hepburn $1,004.00; Mio Rariden Schumacher $2,816.50; Mr. & Ms. Yaldoo $4,000.00; Natalya Shub $100.00; Nicette Wahkinson $616.28; Rick Steckley $1,590.00; Ryan Kucsera $1,800.00; Sherry Kaughman $17,700.00; Terri Griffin $2,371.00; Troy Placit $2,500.00. The following possessed priority claims in the approximate total amount of $23,323.18 but received chargeback on their credit card accounts and no longer have priority claims: Andrea Haaral $477.00; Alice McLoughlin $290.80; Ben Huang $1,367.00; Bradley Hall; $1,430.28; Chris Manzo $500.00; Dharmani (Sheela) $480.00; David Thomas $250.00; Derrick Wanson $530.00; Eydie Reynolds $500.00; Hassan Abbaul $2,000.00; Howard Schwartz $3,380.00; Jason Murphy $200.00; Monish Jain $3,224.20; Russell Baltimore $360.40; Steven Rankin $3,521.50; Takahiro Mori Yama $1,680.00; Wendy Jahnke $2,232.00; William Neddemeyer $900.00. Pursuant to the Motion of Debtor and Debtor in Possession for Authority to Honor Certain Pre-Petition Obligations to Customers, filed on November 12, 2009 (docket number 65), and the Order Granting Motion of Debtor and Debtor in Possession for Authority to Honor Certain Pre-Petition Obligations to Customers, entered on December 1, 2009 (docket number 70), Debtor shall treat all outstanding deposits or pre-payments related to the sales of goods or services that Debtor has not yet delivered, provided (in full or in part) or obtained from third parties in the same manner as Debtor treated Deposits prior to the commencement of this case, and/or provide in-store credits to customers with deposits who purchased the requested furniture from other merchants. There, however, shall be no cash refunds.

# SECURED CLAIMS

A.    Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim. Capital for Merchants possesses a secured claim in the approximate amount of $663,265.15 against the equipment of the debtor. State of Michigan possesses a secured claim in the approximate amount of $43,423.46. Oakland County Treasurer possesses a secured claim in the approximate amount of $617.64. The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
|         |             |                      |            |           |

| | | | | | |
|---|---|---|---|---|---|
| I | *Secured claim of*: Capital for Merchants<br><br>Collateral description = all assets of Debtor<br><br>Allowed Secured Amount = $56,000.00 | No | Impaired | [Monthly] Pmt | = $3,500.00 |
| | | | | Pmts Begin | = Effective Date |
| | | | | Pmts End | = 16 months from Effective Date |
| | | | | Interest rate % | = 5.00% Annual |
| | | | | Treatment of Lien | = Retain lien rights |
| II | *Secured claim of*: State of Michigan<br><br>Collateral description = all assets of Debtor<br><br>Allowed Secured Amount = $43.423.46 | No | Impaired | [Monthly] Pmt | = $1,293.65 |
| | | | | Pmts Begin | = Effective Date |
| | | | | Pmts End | = 36 months from Effective Date |
| | | | | Interest rate % | = 5.00% Annual |
| | | | | Treatment of Lien | = Retain lien rights |
| III | *Secured claim of*: Oakland County Treasurer<br><br>Collateral description = personal property<br><br>Allowed Secured Amount = $617.64 | No | Impaired | [Monthly] Pmt | = $57.65 |
| | | | | Pmts Begin | = Effective Date |
| | | | | Pmts End | = 12m from Effective Date |
| | | | | Interest rate % | = 12.00% Annual |
| | | | | Treatment of Lien | = Retain lien rights |

## B. Class of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class IV, which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment | |
|---|---|---|---|---|
| IV | General Unsecured Class | Impaired | Annual Pmt | = $8,916.12 (2010)<br>= $8,916.12 (2011)<br>= $8,916.12 (2012)<br>= $8,916.12 (2013)<br>= $8,916.12 (2014) |
| | | | Pmts Begin | = October 31, 2010 |
| | | | Pmts End | = 2014 |
| | | | Interest rate % | = 0% |
| | | | Estimated percent of claim paid | = 5% (approximate) |

## C. Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the debtor. In a corporation, the equity interest holders are the shareholders. The interest of equity interest holders shall be treated in one of two alternative methods:

      (1)    If the impaired class of general unsecured claims votes to accept the Plan, then the rights of the equity interest holders shall remain the same. **This Class shall not be Impaired**.

      (2)    If the impaired class of general unsecured claims votes to reject the Plan or if the United States Bankruptcy Court requires, for any reason, that New Value be provided to the debtor, the interests of the equity interest holders shall be cancelled and new units (membership interests) shall be

29

09-65896-pjs   Doc 91   Filed 02/09/10   Entered 02/09/10 17:38:04   Page 29 of 70

reissued to the equity interest holders upon the investment by the equity interest holders of New Value. **This Class shall be Impaired.**

## PLAN IMPLEMENTATION

A. <u>Financial</u>

Debtor has attached as **Exhibit B** hereto and incorporated herein financial reports for the post-Chapter 11 months ending August 31, 2009, September 30, 2009, October 31, 2009, November 30, 2009, and December 31, 2009 that have been filed with the Court and provided to the Office of the U.S. Trustee.

Debtor has also attached as **Exhibit C** hereto and incorporated herein statements of income for the years (periods) ended 2007 and 2008 and statements of income for the pre-petition period beginning January 1, 2009 and ending July 31, 2009.

Debtor has also attached as **Exhibit D** hereto and incorporated herein financial forecasts for the period of January 1, 2010 to December 31, 2014 which encompasses the term of the Plan.

The liquidation analysis set forth in **Exhibit A** and previously outlined in above, indicates that if Debtor's assets were liquidated today, there would be insufficient assets available to satisfy unsecured creditors.

B. <u>Administration</u>

The current management shall continue the general administration of the debtor. Debtor will continue to be managed by Richard Gorges whose gross compensation will be $4,000.00 per month. Richard Gorges shall retain the right to manage the day to day operation of the debtor, post-confirmation, until all payments have been made under the Plan; thereafter, management will revert to Wamidh Bahoora. Included in this right is the exclusive authority to commence litigation, settle and otherwise resolve any and all matters within his reasonable business judgment.

C. Tax Ramifications

The tax consequences to the debtor and/or creditor resulting from confirmation of the Plan may vary depending upon the debtor's and/or creditor's particular circumstances and tax status. Debtor recommends that creditors or holders of claims obtain independent tax counsel to advise them as to the tax consequences of the Plan.

Debtor believes that the forgiveness of indebtedness which may result from a discharge granted by the confirmation of the Plan may result in a tax consequence to the debtor. The forgiveness of indebtedness, pursuant to the Internal Revenue Code, can be applied either to the debtor's basis in its assets or to its net operating loss carry forward. Debtor cannot accurately determine the amount and extent of any forgiveness of indebtedness.

## VI. **LEGAL REQUIRMENTS, AS FOLLOWS:**

A. Voting Procedures

Under the United States Bankruptcy Code, the only classes entitled to vote to accept or reject a plan are classes of claims, or equity interest, impaired under the Plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the Plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order); however, any vote by a holder of a claim will not be counted if such

31

claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. §502 and F.R. Bankr. P. 3018.

Voting on the Plan by each holder of a claim or interest in an impaired class is important. Each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the Plan, and then return the ballot by mail to the Debtor's attorney by the deadline established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

B. Acceptance

The United States Bankruptcy Code defines acceptance of a Plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class that actually cast ballots. The United States Bankruptcy Code defines acceptance of a Plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the Plan.

## C. Confirmation

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a Plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a Plan under 11 U.S.C. § 1129(a) are these:

1.   Each class of impaired creditors and interest must accept the Plan, as described in the Acceptance section above.

2.   Either each holder of a claim or interest in a class must accept the Plan, or the Plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Code.

## D. Modification

The debtor reserves the right to modify or withdraw the plan at any time.

## E. Effect of confirmation

If the Plan is confirmed by the Court:

1.   Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the Plan.

2.   Except as provided in the plan:

   (a) In the case of a corporation that is reorganizing and continuing business:

   (1)   All claims and interests will be discharged.

   (2)   Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

   (b) In the case of a corporation that is liquidating and not continuing its business:

   (1)   Claims and interests will not be discharged.

(2) Creditors and shareholders will not be prohibited from asserting their claims against or interest in the debtor or its assets.

Debtor is reorganizing and intends to continue operating.

Debtor does not intend on liquidating its assets outside of the ordinary course of business.

| Proposed and Prepared By: | Prepared By: |
|---|---|
| Olivia Marie, Inc. DBA Italmoda Furniture<br><br>/s/ Richard Gorges<br>Authorized and Responsible Person for Debtor<br><br>Dated: February 9, 2010 | STEVENSON & BULLOCK, P.L.C.<br><br>/s/ Charles D. Bullock (P55550)<br>Charles D. Bullock (P55550<br>Sonya N. Goll (P61136)<br>Counsel for Debtor<br>26100 American Drive, Suite 500<br>Southfield, MI 48034<br>(248) 354-7906 X 2224<br>cbullock@sbplclaw.com<br><br>Dated: February 9, 2010 |

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION – DETROIT**

In the Matter of:

Olivia Marie, Inc.
DBA Italmoda Furniture,
   Debtor.

Bankruptcy Case No. 09-65896
Honorable Phillip J. Shefferly
Chapter 11

_____ /

**EXHIBIT "A"**

**LIQUIDATION ANALYSIS**

Debtor's Liquidation Analysis is as follows:

A. **Liquidation Analysis**

1. **Assets**

| | Fair-Market Values | Liquidation Values |
|---|---|---|
| Real Property | $    0.00 | $     0.00 |
| Checking Account (Chase) | 0.00 | 0.00 |
| DTE security deposit | 2,248.00 | 2,248.00 |
| Accounts Receivables | 42,948.81 | 4,300.00 |
| Anticipated Insurance Proceeds | 491,000.00 | 0.00 |
| Office Equipment | 5,415.00 | 3,500.00 |
| Inventory | 184,405.00 | |
| Leased Vehicles | 0.00 | 0.00 |
| | $726,016.81 | $10,048.00 |

2. **Liabilities**

| | Estimated Amount of Claim |
|---|---|
| a.   Secured Debts | |
| Capital for Merchants | $  56,000.00 |
| State of Michigan | 43,423.46 |
| Oakland County Treasurer | 617.64 |
| **Total Secured Debt** | **$100,041.10** |

b.   Administrative Expenses

| | | Estimated Amount of Claim |
|---|---|---|
| 1. | Professional Fees and Expenses (estimates Upon work in process) | $ 48,000.00 |
| 2. | United States Trustee Fees | 9,750.00 |

**Total Administrative Expenses**          **$ 57,750.00**

c.   Remaining Creditors                              Estimated Amount of
                                                                   Claim
     1. Priority Claims:

            a.   Customer Deposits               not paid through plan
            b.   State of Michigan                  $51,491.47
            c.   Internal Revenue Service     $27,654.96.

     2.  Unsecured Creditors                      $904,551.09

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION – DETROIT

In the Matter of:

Olivia Marie, Inc.
DBA Italmoda Furniture,
    Debtor.

Bankruptcy Case No. 09-65896
Honorable Phillip J. Shefferly
Chapter 11

_____/

## SUMMARY OF CREDITORS AND CLAIMS

### SECURED DEBT

| DETAIL | CLAIM | Curr. Mo. Pmt. | Interest | Total |
|---|---|---|---|---|
| **Capital for Merchants** | **$56,000.00** | **$3,500.00** | **5%** | **$58,650.00** |
| **State of Michigan** | **$43,423.46** | **$1,293.65** | **5%** | **$46,571.66** |
| **Oakland County Treasurer** | **$ 617.64** | **$57.65** | **12%** | **$691.80** |

### PRIORITY TAXES

| DETAIL | CLAIM |
|---|---|
| **State of Michigan** | **$51,491.47** |
| **Internal Revenue Service** | **$27,654.96** |

### UNSECURED DEBT

| CREDITOR | BANKRUPTCY SCHEDULES | Proof of CLAIM | (Estimated) Plan Payment 2011 - 2014 |
|---|---|---|---|
| ABF Freight Systems | 570.67 | | 28.53 |
| Ambiente & Design Inc. | 10,657.78 | 12,968.78 | 648.44 |
| ACAM SLR | 69,000.00 | 53,902.06 | 2,695.10 |
| ACCO Furniture | 4,999.00 | | 249.95 |
| Acerbis International Spa | 7,045.77 | 7,112.92 | 355.65 |
| Advance Me, Inc. | 28,125.00 | | 1,406.25 |
| Affluent Target marketing | 3,005.00 | 5,364.08 | 268.20 |
| Air 7 Seas | 1,053.00 | | 52.65 |
| Alessi | 2,900.00 | 2,926.26 | 146.31 |
| American Express | 68,482.14 | 65,379.35 | 3,268.97 |
| Ann Arbor News | 2,119.04 | | 105.95 |

| Creditor | Amount | Amount | Amount |
|---|---|---|---|
| Arketipo | 3,111.60 | | 155.58 |
| Artemide Inc. | 525.80 | | 26.29 |
| Artifort | 11,515.60 | | 575.78 |
| AT&T | 3,095.27 | | 154.76 |
| Atelano | 2,578.13 | 2,296.70 | 114.84 |
| Banaldo/Leif Peterson | 17,243.00 | | 862.15 |
| Bellini Imports | 5,115.00 | | 255.75 |
| Bensen Inc. | 12,280.14 | | 614.01 |
| Blomus-SKS USA Corporation | 6,058.70 | | 302.94 |
| Callagaris | 12,500.00 | | 625.00 |
| Cambridge payment Systems | 18,000.00 | | 900.00 |
| Capital for Merchants NA | 3,779.84 | 63,265.15 | 3,163.26 |
| Carrera Transport, Inc. | 4,180.06 | | 209.00 |
| Carter Furniture of Salisbury | 32,635.00 | | 1,631.75 |
| Cattelan Italia SPA | 2,910.00 | 7,466.65 | 373.33 |
| CIT Group | 22,409.58 | 22,738.58 | 1,136.93 |
| Comcast | 295.06 | | 14.75 |
| Consumers Energy | 140.50 | 388.92 | 19.45 |
| Costco Wholesale | 300.00 | | 15.00 |
| DHL Express | 1,658.73 | | 82.94 |
| Didido Li Prego | 6,650.69 | | 332.53 |
| DTE Energy | 1,521.79 | | 76.09 |
| Dwell, Inc. | 13,000.00 | | 650.00 |
| Elite Event Rentals | 3,005.00 | 2,024.64 | 101.23 |
| Emeco | 1,935.00 | 1,952.99 | 97.65 |
| Fabbian | 7,000.00 | 9,002.16 | 450.11 |
| Fedex National LTL | 2,171.66 | 851.88 | 42.59 |
| Foreign Accents | 2,682.76 | | 134.14 |
| Gary Witalec | 1,370.00 | | 68.50 |
| GFI | 1,786.41 | | 89.32 |
| Global Furniture USA | 3,130.44 | | 156.52 |
| Hartland Payment | 1,000.05 | 1,000.05 | 50.25 |
| Heller Incorporated | 10,940.00 | | 547.00 |
| Hour Media | 3,626.43 | | 181.32 |
| Indeal Sedia | 1,900.00 | 1,816.75 | 90.84 |
| **J & J Fine Furniture** | **20,000.00** | **52,450.00 disputed; objection filed** | |
| Jesse/Lief Peterson | 23,164.78 | 11,160.75 | 558.04 |
| Joel Feldmesser | 420.00 | | 21.00 |
| Khalil Ramadan | 15,000.00 | | 750.00 |
| LBL | 990.00 | | 49.50 |
| Leif Peterson | 898.00 | | 44.90 |
| Limestone Building | 7,599.14 | | 379.96 |
| Lipton Law Center | 8,800.00 | 5,800.00 | 290.00 |
| Lou Basco | 82,326.45 | | 4,116.32 |
| Luce Plan | 3,140.47 | | 157.02 |
| Michigan Department of Treasury | 8,184.10 | 8,184.10 | 409.21 |
| Modern Fan Company | 1,360.00 | | 68.00 |
| Modernica | 1,030.00 | | 51.50 |
| National Fire and Restoration | 10,000.00 | | 500.00 |

| | | | |
|---|---|---|---|
| Nespresso | 441.90 | | 22.10 |
| North American Bancard | 66,135.79 | 78,848.41 | 3,942.42 |
| Noto Zues | 2,341.48 | | 117.07 |
| Nube de Nicoli Antonio & C.snc | 6,692.70 | | 334.64 |
| Nuelco Lighting | 5,000.00 | 4,925.00 | 246.25 |
| Ouef, LLC | 448.00 | 448.00 | 22.40 |
| Panalpina | 10,478.91 | 10,478.91 | 523.95 |
| Panther Control Corporation | 6,448.67 | | 322.43 |
| Paradina USA | 60.00 | | 3.00 |
| Penske | 1,672.50 | | 83.63 |
| Porada | 7,172.30 | | 358.62 |
| Pressotto | 2,075.00 | | 103.75 |
| Rizzo | 105.10 | | 5.26 |
| RL Carriers | 119.09 | | 5.95 |
| Roadrunner Transportation | 125.54 | | 6.28 |
| Rosesetto USA Inc. | 19,279.00 | | 963.95 |
| Royal Oak P.D.Q. Printing Inc | 664.62 | 664.62 | 33.23 |
| **Shimoun, Yaldo, Kashat & Assoc.** | **3,624.00** | **claimed waived in affidavit for motion to employ** | |
| Signs By Tomorrow | 220.00 | | 11.00 |
| Sonneman A Way of Light | 242.88 | | 12.14 |
| Tempus Consulting, Inc. | 52,496.40 | 37,018.67 | 1,850.93 |
| Transmec MP USA LLC | 76,000.00 | 75,039.46 | 3,751.97 |
| UPS | 319.72 | 346.90 | 17.50 |
| USPS | 165.00 | | 8.25 |
| Vitra Inc. | 15,761.47 | 15,956.80 | 797.84 |
| Watkins Shepard Trucking | 827.88 | | 41.39 |
| Williams Furniture Ind. | 8,614.98 | | 430.75 |
| Zuo | 35,275.98 | | 1,763.80 |
| Zuo Modern Canada Inc. | 1,035.00 | | 51.75 |
| Internal Revenue Service | n/a | 7,325.71 | 366.29 |
| Michigan Department of Treasury | n/a | 8,184.10 | 409.21 |
| United Parcel Service | n/a | 907.99 | 45.40 |
| FedEx Freight | n/a | 651.88 | 32.59 |
| The Travelers Indemnity | n/a | 1,328.00 | 66.40 |
| | **926,766.49** | **526,484.30** | (Estimated $908,133.35) |

# EXHIBIT B

Olivia Marie's China & Gift Furniture LLC
Balance Sheet

| | 04/01/09 | 05/01/09 | 10/01/09 | 11/01/09 | 12/01/09 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| **Current Assets** | | | | | |
| Checking/Savings | 715.28 | 1,025.59 | 72,101.13 | 5,723.92 | 533.56 |
| Inventory | | | | | |
| Warehouse Inventory | 194,425.00 | 173,762.74 | 173,762.74 | 173,762.74 | 197,554.77 |
| Accounts Receivable | | | | | 107,000.00 |
| Prepaid Expenses | 42,948.91 | 51,924.73 | 42,135.51 | 60,941.34 | 67,931.31 |
| Furniture and Equipment | 0.00 | 6,225.45 | 13,829.81 | 10,925.28 | 2,242.65 |
| Insurance Claim Receivable | 8,415.00 | 5,415.00 | 5,415.00 | 5,415.00 | 5,415.00 |
| Security Deposits Asset | 491,000.00 | 491,000.00 | 491,000.00 | 491,000.00 | 491,000.00 |
| | 2,246.00 | 2,246.00 | 2,246.00 | 2,246.00 | 2,246.00 |
| **TOTAL ASSETS** | 739,732.04 | 737,642.43 | 610,192.13 | 733,454.73 | 164,431.11 |
| | | | | | |
| **LIABILITIES & EQUITY** | | | | | |
| **Liabilities** | | | | | |
| **Post Petition Liabilities** | | | | | |
| Accrued Expenses | 0.00 | 7,932.00 | 3,502.00 | 0.00 | 1,892.25 |
| Accounts Payable - Postpetition | 0.00 | 0.00 | 4,483.53 | 1,858.44 | 24,092.43 |
| Rent Payable | 1,852.26 | 8,225.35 | 8,224.35 | 14,458.35 | 9,222.60 |
| Taxes Payable | 0.00 | 455.80 | 10,001.30 | 3,667.39 | 1,718.00 |
| Postpetition Customer Deposits | 715.50 | 15,312.47 | 65,827.52 | 103,654.98 | 131,463.18 |
| Total Accounts Payable | 2,917.15 | 32,545.62 | 65,872.21 | 120,470.16 | 157,350.04 |
| | | | | | |
| **Secured Liabilities:** | | | | | |
| SHT Post Petition Cost Order | 63,850.00 | 61,150.00 | 58,650.00 | 53,150.00 | 53,150.00 |
| All Other Secured Liabilities | 27,334.06 | 27,334.04 | 27,534.04 | 27,534.04 | 27,534.04 |
| Total Secured Liabilities | 91,184.06 | 88,684.04 | 84,184.04 | 83,684.04 | 80,684.04 |
| | | | | | |
| **Pre-Petition Liabilities** | | | | | |
| Taxes & Other Priority Liabilit | 43,374.72 | 43,374.72 | 43,374.72 | 43,374.72 | 43,374.72 |
| Unsecured Liabilities | 1,048,548.40 | 1,048,548.40 | 1,048,548.40 | 1,048,548.40 | 1,048,548.40 |
| Total Pre-Petition Liabilities | 1,091,922.62 | 1,091,922.62 | 1,091,922.62 | 1,091,922.62 | 1,091,922.62 |
| | | | | | |
| **Equity** | | | | | |
| Owner's Capital | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Preposition Retained Earnings | -450,809.86 | -435,039.25 | -418,059.85 | -451,089.86 | -451,089.86 |
| Postpetition Retained Earnings | -1,992.57 | -18,770.91 | -3,859.27 | -87,530.66 | -18,372.56 |
| Total Equity | -452,592.43 | -453,890.77 | -440,859.10 | -537,820.54 | -473,463.91 |
| | | | | | |
| **TOTAL LIABILITIES** | 1,186,116.47 | 1,213,152.28 | 1,271,201.41 | 1,295,076.82 | 1,329,941.70 |
| **TOTAL LIABILITIES & EQUITY** | 739,732.04 | 737,242.27 | 610,192.24 | 733,454.73 | 164,431.11 |

| Ordinary Income/Expense | 08/31/09 | 09/30/09 | 10/31/09 | 11/30/09 | 12/31/09 | 5 Months ending 12/31/09 |
|---|---|---|---|---|---|---|
| Total Revenue / Sales | 0.00 | 8,198.52 | 125,916.21 | 18,992.27 | 32,883.83 | 186,988.83 |
| Cost of Goods Sold | | 4,840.83 | 65,416.28 | 47,125.42 | 24,194.21 | 121,576.74 |
| Gross Profit | 0.00 | 4,355.69 | 80,499.93 | -28,133.15 | 8,689.62 | 65,412.09 |
| **Expense** | | | | | | |
| Officer Compensation | | | 4,000.00 | 5,000.00 | 4,000.00 | 13,000.00 |
| Salaries & Wages (other employees) | | 1,290.00 | 7,493.53 | 8,977.50 | 2,325.00 | 20,086.03 |
| Payroll Taxes | | | 678.19 | 558.23 | 241.05 | 1,478.47 |
| Other Taxes | | | 31.75 | 0.00 | 8.14 | 39.89 |
| Rent & Lease Expense | | 1,892.25 | 5,333.00 | 7,333.00 | 5,217.00 | 28,108.35 |
| Interest Expense | | 199.65 | 0.00 | 0.00 | 0.80 | 0.80 |
| Insurance Expense | | | 273.60 | 368.10 | 273.80 | 1,115.15 |
| Trucking Expense | | | 3,562.50 | 0.00 | 0.00 | 3,362.50 |
| Utilities | | | 289.00 | 1,710.18 | 714.61 | 3,883.87 |
| Repairs and Maintenance | | | 765.00 | 99.00 | 735.00 | 1,829.00 |
| Advertising | | | | | 72.08 | 72.08 |
| Casual labor | | | 1,505.00 | 200.00 | 1,655.00 | 3,560.00 |
| Supplies, Office Expense, etc. | | 60.38 | 438.50 | 1,075.67 | 3,447.45 | 5,021.88 |
| Bank Service Charges | 0.22 | 18.12 | 482.29 | 371.31 | 535.38 | 1,415.31 |
| Sales Commission | | | 22,427.00 | 13,750.00 | 0.00 | 36,177.00 |
| **Total Expense** | 1,692.57 | 11,734.03 | 47,128.20 | 37,068.11 | 18,929.52 | 118,750.43 |
| **Net Operating Profit (Loss)** | -1,692.57 | -7,378.34 | 33,372.73 | -65,201.26 | -10,239.90 | -51,339.34 |
| Add Non Operating Income: | | | | | | |
| Interest Income | | | | | | |
| Other Income | | | | | 0.83 | 0.83 |
| **Total Non Operating Income** | | | | | 0.83 | 0.83 |
| Less Non Operating Expenses: | | | | | | |
| Warehouse Inventory effective 1/1/10 | | 9,500.00 | 13,825.00 | 15,500.00 | 20,089.00 | -100,000.00 |
| Professional Fees | | | | -18.60 | 225.00 | 60,914.00 |
| Other | | | | | | 4,122.14 |
| **Net** | -1,892.57 | -16,878.34 | 17,548.71 | -80,682.86 | -30,653.07 | -16,373.65 |

# EXHIBIT C

# OLIVIA MARIE INC
## ITALMODA FURNITURE

## FINANCIAL STATEMENTS

## FOR THE PERIODS ENDED
## DECEMBER 31, 2007

SHIMOUN, YALDO, KASHAT & ASSOC., P.C.
31000 NORTHWESTERN HIGHWAY
SUITE 110
FARMINGTON HILLS, MICHIGAN 48334

Shimoun, Yaldo, Kashat & Assoc., P.C.
31000 Northwestern Hwy Ste 110
Farmington Hills, MI 48334
248-851-7900

To the Board of Directors
Olivia Marie Inc
32968 Woodward Ave
Royal Oak, MI 48073

We have compiled the accompanying statement of assets, liabilities, and equity-cash basis of Olivia Marie Inc as of December 31, 2007, the related statements of revenues and expenses-cash basis for the one month and twelve months then ended, the statement of retained earnings-cash basis for the twelve months then ended and the accompanying supplementary information-cash basis which is presented only for supplementary analysis purposes, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. The financial statements have been prepared on the cash basis of accounting which is a comprehensive basis of accounting other than generally accepted accounting principles.

A compilation is limited to presenting in the form of financial statements and supplementary schedules information that is representation of management. We have not audited or reviewed the accompanying financial statements and supplementary schedules and, accordingly, do not express an opinion or any other form of assurance on them.

Management has elected to omit substantially all disclosures ordinarily included in financial statements prepared on the cash basis of accounting. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's assets, liabilities, equity, revenues and expenses. Accordingly, these financial statements are not designed for those who are not informed about such matters.

The company, with the consent of its shareholders, has elected under the Internal Revenue Code to be an S-Corporation. Instead of corporate income taxes, the shareholders of an S-Corporation are taxed on their proportionate share of the company's taxable income. Therefore, no provision or liability for federal income taxes has been included in these financial statements.

We are not independent with respect to Olivia Marie Inc.

Shimoun, Yaldo, Kashat & Assoc., P.C.
Certified Public Accountants

December 10, 2009

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2007

## ASSETS

**CURRENT ASSETS**

| | | |
|---|---:|---:|
| Cash | $ (72,952.00) | |
| Inventory | 1,258,000.00 | |
| **Total Current Assets** | | 1,185,048.00 |

**FIXED ASSETS**

| | | |
|---|---:|---:|
| Property & Equipment | 29,053.99 | |
| Less: Accumulated Depreciation | (12,552.53) | |
| **Net Property and Equipment** | | 16,501.46 |

**OTHER ASSETS**

| | | |
|---|---:|---:|
| Other Assets | 139,683.00 | |
| **Total Other Assets** | | 139,683.00 |
| **TOTAL ASSETS** | | $ 1,341,232.46 |

## LIABILITIES AND STOCKHOLDERS' EQUITY

**CURRENT LIABILITIES**

| | | |
|---|---:|---:|
| Accounts Payable | 863,000.00 | |
| Accrued Liabilities | $ 7,618.09 | |
| **Total Current Liabilities** | | 870,618.09 |

**LONG-TERM LIABILITIES**

| | | |
|---|---:|---:|
| Loans Payable | 305,226.57 | |
| **Total Long-Term Liabilities** | | 305,226.57 |
| **Total Liabilities** | | 1,175,844.66 |

**STOCKHOLDERS' EQUITY**

| | | |
|---|---:|---:|
| Capital Stock | 1,000.00 | |
| Retained Earnings | 164,387.80 | |
| **Total Stockholders' Equity** | | 165,387.80 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | | $ 1,341,232.46 |

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2007

### Supplementary Subschedule

**Cash**

| | |
|---|---:|
| Cash on Hand | $1,917.99 |
| Cash In Bank - Nstar #2477 | (45,668.41) |
| Cash In Bank - Franklin Bank #8208 | (29,201.58) |
| **Total** | **(72,952.00)** |

**Inventory**

| | |
|---|---:|
| Inventory | $1,258,000.00 |
| **Total** | **$1,258,000.00** |

**Property & Equipment**

| | |
|---|---:|
| Fixtures & Equipment | $12,253.99 |
| Leasehold Improvments | 16,800.00 |
| **Total** | **$29,053.99** |

**Accumulated Depreciation**

| | |
|---|---:|
| Accum Depr- Fixtures & Equipment | $(10,815.99) |
| Accum Depr- Leasehold Improvements | (1,736.54) |
| **Total** | **$(12,552.53)** |

**Other Assets**

| | |
|---|---:|
| Prepaid Merchandise Deposits | $139,683.00 |
| **Total** | **$139,683.00** |

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
### As of December 31, 2007

## Supplementary Subschedule

**Accounts Payable**

| | |
|---|---|
| Customer Deposits | $863,000.00 |
| **Total** | 863,000.00 |

**Accrued Liabilities**

| | |
|---|---|
| Federal Tax Deposit Payable | $1,936.62 |
| State W/H Payable | 320.60 |
| Unemp Tax Payable - Federal | 676.76 |
| Sales Tax Payable | 4,684.11 |
| **Total** | $7,618.09 |

**Loans Payable**

| | |
|---|---|
| Loan Payable-Officer | $245,193.23 |
| Loan Payable - Advance Me | 60,033.34 |
| **Total** | $305,226.57 |

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2007

### STATEMENT OF RETAINED EARNINGS

|  | 12 Months Ended<br>December 31, 2007 |
|---|---|
| Beginning of Period | $ 166,354.27 |
| Plus: Net Income | $ (1,966.47) |
| Less: Officer Distributions | 0.00 |
| **RETAINED EARNINGS<br>END OF PERIOD** | $ 164,387.80 |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
## For the and 12 Months Ended  December 31, 2007

|  | 12 Months Ended December 31, 2007 | % |
|---|---|---|
| **Sales** |  |  |
| Sales -Including Sales Tax | $      1,545,221.24 | 100.00 |
| Less: Sales Tax | (65,860.89) | (4.26) |
| Less: Returns & Allowances | (35,342.42) | (2.29) |
| **Total Sales** | 1,444,017.93 | 93.45 |
| **Cost of Goods Sold** |  |  |
| Cost of Goods Sold | 1,134,816.05 | 73.44 |
| **Total Cost of Goods Sold** | 1,134,816.05 | 73.44 |
| **Gross Profit** | 309,201.88 | 20.01 |
| **Operating Expenses** |  |  |
| Officers Compensation | 13,000.00 | 0.84 |
| Salaries & Wages-Employees | 83,965.00 | 5.43 |
| Repairs & Maintenance | 6,892.00 | 0.45 |
| Rent | 41,000.01 | 2.65 |
| Depreciation | 1,350.44 | 0.09 |
| Advertising | 19,148.65 | 1.24 |
| Alarm | 157.00 | 0.01 |
| Auto & Truck Expense | 9,890.68 | 0.64 |
| Bank Charges | 32,294.06 | 2.09 |
| Credit Card Fees | 51,447.72 | 3.33 |
| Office Expense | 2,268.12 | 0.15 |
| Supplies | 3,239.30 | 0.21 |
| Casual & Outside Labor | 16,436.02 | 1.06 |
| Delivery | 3,500.00 | 0.23 |
| Contributions | 325.00 | 0.02 |
| Commissions Expense | 16,848.01 | 1.09 |
| Cleaning and Laundry | 2,213.44 | 0.14 |
| Postage & Shipping | 15,238.57 | 0.99 |
| Refuse Collection | 550.00 | 0.04 |
| Telephone | 3,374.68 | 0.22 |
| Utilities | 11,990.83 | 0.78 |
| Operating Lease-Equipment | 611.86 | 0.04 |
| Snow Plowing | 400.00 | 0.03 |
| Meals & Entertainment | 12.71 | 0.00 |
| Travel & Lodging | 3,892.00 | 0.25 |
| Legal and Accounting | 7,584.48 | 0.49 |
| Penalties & Fines | 7,209.03 | 0.47 |
| Taxes & Licenses Expense | 11,145.40 | 0.72 |
| Insurance Expense | 10,416.34 | 0.67 |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
## For the and 12 Months Ended  December 31, 2007

|  | 12 Months Ended December 31, 2007 | % |
|---|---|---|
| **Total Operating Expenses** | 376,401.35 | 24.36 |
| **Operating Income (Loss)** | (67,199.47) | (4.35) |
| **Other Income** | | |
| Other Income | 65,233.00 | 4.22 |
| **Total Other Income (Loss)** | 65,233.00 | 4.22 |
| **Net Income (Loss)** | $ (1,966.47) | (0.13) |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
## For the and 12 Months Ended  December 31, 2007

## Supplementary Subschedule

|  | 12 Months Ended December 31, 2007 | % |
|---|---|---|
| **Returns & Allowances** | | |
| Sales: Returns | $ (35,342.42) | (2.29) |
| **Total** | $ (35,342.42) | (2.29) |
| | | |
| **Other Income** | | |
| Income - Delivery | $ 60,583.00 | 3.92 |
| Income - Furniture Rental | 4,650.00 | 0.30 |
| **Totals** | $ 65,233.00 | 4.22 |
| | | |
| **Insurance Expense** | | |
| Insurance-General | $ 10,416.34 | 0.67 |
| **Totals** | $ 10,416.34 | 0.67 |
| | | |
| **Taxes and Licenses Expense** | | |
| Taxes - FICA | $ 7,417.94 | 0.48 |
| Taxes - Federal Unemployment | 280.00 | 0.02 |
| Taxes - State Unemployment | 54.63 | 0.00 |
| Taxes | 350.91 | 0.02 |
| Taxes - Property | 3,041.92 | 0.20 |
| **Totals** | $ 11,145.40 | 0.72 |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
## For the and 12 Months Ended  December 31, 2007

## Supplementary Subschedule

|  | 12 Months Ended December 31, 2007 | % |
|---|---|---|
|  | Merchandise |  |
| **Sales** |  |  |
| Sales: Exempt & Out of State | $ 388,447.16 | 25.14 |
| Sales: Taxable | 1,156,774.08 | 74.86 |
| **Total Sales** | 1,545,221.24 | 100.00 |
| **Cost of Goods Sold** |  |  |
| Purchases: General | 1,007,986.82 | 65.23 |
| Purchases: Freight | 126,829.23 | 8.21 |
| **Total Cost of Goods Sold** | 1,134,816.05 | 73.44 |
| **Gross Profit** | $ 410,405.19 | 26.56 |

# OLIVIA MARIE INC
## ITALMODA FURNITURE

## FINANCIAL STATEMENTS

## FOR THE PERIODS ENDED
## DECEMBER 31, 2008

SHIMOUN, YALDO, KASHAT & ASSOC., P.C.
31000 NORTHWESTERN HIGHWAY
SUITE 110
FARMINGTON HILLS, MICHIGAN 48334

Shimoun, Yaldo, Kashat & Assoc., P.C.
31000 Northwestern Hwy Ste 110
Farmington Hills, MI 48334
248-851-7900

To the Board of Directors
Olivia Marie Inc
32968 Woodward Ave
Royal Oak, MI 48073

We have compiled the accompanying statement of assets, liabilities, and equity-cash basis of Olivia Marie Inc as of December 31, 2008, the related statements of revenues and expenses -cash basis for the one month and twelve months then ended, the statement of retained earnings-cash basis for the twelve months then ended and the accompanying supplementary information -cash basis which is presented only for supplementary analysis purposes, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. The financial statements have been prepared on the cash basis of accounting which is a comprehensive basis of accounting other than generally accepted accounting principles.

A compilation is limited to presenting in the form of financial statements and supplementary schedules information that is representation of management. We have not audited or reviewed the accompanying financial statements and supplementary schedules and, accordingly, do not express an opinion or any other form of assurance on them.

Management has elected to omit substantially all disclosures ordinarily included in financial statements prepared on the cash basis of accounting. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's assets, liabilities, equity, revenues and expenses. Accordingly, these financial statements are not designed for those who are not informed about such matters.

The company, with the consent of its shareholders, has elected under the Internal Revenue Code to be an S-Corporation. Instead of corporate income taxes, the shareholders of an S-Corporation are taxed on their proportionate share of the company's taxable income. Therefore, no provision or liability for federal income taxes has been included in these financial statements.

We are not independent with respect to Olivia Marie Inc.

Shimoun, Yaldo, Kashat & Assoc., P.C.
Certified Public Accountant s

February 9, 2010

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2008

## ASSETS

**CURRENT ASSETS**

| | | |
|---|---:|---:|
| Cash | $ (16,209.42) | |
| Inventory | 1,233,000.00 | |
| **Total Current Assets** | | 1,216,790.58 |

**FIXED ASSETS**

| | | |
|---|---:|---:|
| Property & Equipment | 29,053.99 | |
| Less: Accumulated Depreciation | (13,815.96) | |
| **Net Property and Equipment** | | 15,238.03 |
| **TOTAL ASSETS** | | $ 1,232,028.61 |

## LIABILITIES AND STOCKHOLDERS' EQUITY

**CURRENT LIABILITIES**

| | | |
|---|---:|---:|
| Accounts Payable | 785,000.00 | |
| Accrued Liabilities | $ 25,296.26 | |
| **Total Current Liabilities** | | 810,296.26 |

**LONG-TERM LIABILITIES**

| | | |
|---|---:|---:|
| Loans Payable | 251,613.05 | |
| **Total Long-Term Liabilities** | | 251,613.05 |
| **Total Liabilities** | | 1,061,909.31 |

**STOCKHOLDERS' EQUITY**

| | | |
|---|---:|---:|
| Capital Stock | 1,000.00 | |
| Retained Earnings | 169,119.30 | |
| **Total Stockholders' Equity** | | 170,119.30 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | | $ 1,232,028.61 |

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2008

### Supplementary Subschedule

**Cash**

| | |
|---|---:|
| Cash on Hand | $1,028.03 |
| Cash In Bank - Nstar #2477 | (17,237.45) |
| **Total** | (16,209.42) |

**Inventory**

| | |
|---|---:|
| Inventory | $1,233,000.00 |
| **Total** | $1,233,000.00 |

**Property & Equipment**

| | |
|---|---:|
| Fixtures & Equipment | $12,253.99 |
| Leasehold Improvments | 16,800.00 |
| **Total** | $29,053.99 |

**Accumulated Depreciation**

| | |
|---|---:|
| Accum Depr- Fixtures & Equipment | $(11,648.65) |
| Accum Depr- Leasehold Improvements | (2,167.31) |
| **Total** | $(13,815.96) |

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2008

### Supplementary Subschedule

**Accounts Payable**

| | |
|---|---:|
| Customer Deposits | $785,000.00 |
| **Total** | 785,000.00 |

**Accrued Liabilities**

| | |
|---|---:|
| Federal Tax Deposit Payable | $14,835.73 |
| State W/H Payable | 700.04 |
| Unemp Tax Payable - Federal | 746.64 |
| Unemp Tax Payable - State | 87.56 |
| MBT Payable | 500.00 |
| Sales Tax Payable | 8,426.29 |
| **Total** | $25,296.26 |

**Loans Payable**

| | |
|---|---:|
| Loan Payable - Capital Merchant | $62,610.00 |
| Loan Payable-Officer | 134,169.70 |
| Loan Payable - Advance Me | 54,833.35 |
| **Total** | $251,613.05 |

# Olivia Marie Inc
## Statement of Assets, Liabilities, and Equity - Cash Basis
## As of December 31, 2008

### STATEMENT OF RETAINED EARNINGS

|  | 12 Months Ended December 31, 2008 |
|---|---|
| Beginning of Period | $ 164,387.80 |
| Plus: Net Income | $ 4,731.50 |
| Less: Officer Distributions | 0.00 |
| **RETAINED EARNINGS END OF PERIOD** | $ 169,119.30 |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
### For the and 12 Months Ended December 31, 2008

|  | 12 Months Ended December 31, 2008 | % |
|---|---|---|
| **Sales** | | |
| Sales -Including Sales Tax | $ 1,206,460.81 | 100.00 |
| Less: Sales Tax | (52,469.00) | (4.35) |
| Less: Returns & Allowances | (8,117.07) | (0.67) |
| **Total Sales** | 1,145,874.74 | 94.98 |
| **Cost of Goods Sold** | | |
| Cost of Goods Sold | 834,333.76 | 69.16 |
| **Total Cost of Goods Sold** | 834,333.76 | 69.16 |
| **Gross Profit** | 311,540.98 | 25.82 |
| **Operating Expenses** | | |
| Officers Compensation | 13,000.00 | 1.08 |
| Salaries & Wages-Employees | 53,755.00 | 4.46 |
| Repairs & Maintenance | 11,958.00 | 0.99 |
| Rent | 45,834.94 | 3.80 |
| Depreciation | 1,263.43 | 0.10 |
| Advertising | 12,835.97 | 1.06 |
| Alarm | 204.60 | 0.02 |
| Auto/Truck Rental | 2,982.19 | 0.25 |
| Auto & Truck Expense | 12,348.14 | 1.02 |
| Bank Charges | 29,623.31 | 2.46 |
| Credit Card Fees | 19,066.68 | 1.58 |
| Office Expense | 1,068.82 | 0.09 |
| Supplies | 2,946.68 | 0.24 |
| Casual & Outside Labor | 40,568.39 | 3.36 |
| Delivery | 4,260.00 | 0.35 |
| Contributions | 1,300.00 | 0.11 |
| Commissions Expense | 28,885.07 | 2.39 |
| Cleaning and Laundry | 1,844.68 | 0.15 |
| Postage & Shipping | 6,637.39 | 0.55 |
| Refuse Collection | 53.33 | 0.00 |
| Telephone | 8,639.87 | 0.72 |
| Utilities | 9,228.67 | 0.76 |
| Travel & Lodging | 3,190.84 | 0.26 |
| Legal and Accounting | 2,508.33 | 0.21 |
| Miscellaneous | 450.00 | 0.04 |
| Taxes & Licenses Expense | 8,906.90 | 0.74 |
| Insurance Expense | 13,097.42 | 1.09 |
| **Total Operating Expenses** | 336,458.65 | 27.89 |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
### For the and 12 Months Ended  December 31, 2008

|  | 12 Months Ended December 31, 2008 | % |
|---|---|---|
| **Operating Income (Loss)** | (24,917.67) | (2.07) |
| **Other Income** | | |
| Other Income | 29,649.17 | 2.46 |
| **Total Other Income (Loss)** | 29,649.17 | 2.46 |
| **Net Income (Loss)** | $  4,731.50 | 0.39 |

·

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
### For the and 12 Months Ended  December 31, 2008

## Supplementary  Subschedule

|  | | 12 Months Ended<br>December 31, 2008 | % |
|---|---|---|---|
| **Returns & Allowances** | | | |
| Sales: Returns | $ | (8,117.07) | (0.67) |
| Total | $ | (8,117.07) | (0.67) |
| | | | |
| **Other Income** | | | |
| Income - Delivery | $ | 23,306.85 | 1.93 |
| Income - Furniture Rental | | 6,342.32 | 0.53 |
| Totals | $ | 29,649.17 | 2.46 |
| | | | |
| **Insurance Expense** | | | |
| Insurance-General | $ | 13,097.42 | 1.09 |
| Totals | $ | 13,097.42 | 1.09 |
| | | | |
| **Taxes and Licenses Expense** | | | |
| Licenses, Fees & Permits | $ | 210.00 | 0.02 |
| Taxes - FICA | | 5,106.82 | 0.42 |
| Taxes - Federal Unemployment | | 260.36 | 0.02 |
| Taxes - State Unemployment | | 315.28 | 0.03 |
| Taxes - MBT Estimate | | 2,200.00 | 0.18 |
| Taxes - Single Bus-Prior Yr | | 750.00 | 0.06 |
| Taxes - Michigan Annual Report | | 50.00 | 0.00 |
| Taxes - Property | | 14.44 | 0.00 |
| Totals | $ | 8,906.90 | 0.74 |

# Olivia Marie Inc
## Statement of Revenues and Expenses - Cash Basis
## For the and 12 Months Ended  December 31, 2008

### Supplementary Subschedule

|  | 12 Months Ended December 31, 2008 | % |
|---|---|---|
|  | Merchandise |  |
| **Sales** |  |  |
| Sales: Exempt & Out of State | $ 284,748.29 | 23.60 |
| Sales: Taxable | 921,712.52 | 76.40 |
| **Total Sales** | 1,206,460.81 | 100.00 |
| **Cost of Goods Sold** |  |  |
| Purchases: General | 818,350.42 | 67.83 |
| Purchases: Freight | 15,983.34 | 1.32 |
| **Total Cost of Goods Sold** | 834,333.76 | 69.16 |
| **Gross Profit** | $ 372,127.05 | 30.84 |

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **2009** | | | | | | | | | |
| **Cash Receipts** | | | | | | | | | |
| Incoming Freight | | | | | | | | | |
| Merchandise Sales | 11,990 | 33,858 | 22,465 | (23,632) | 24,727 | 74,136 | 36,146 | 1,742 | 181,431 |
| Sales Returns | (7,506) | | | | | | | | (7,506) |
| **Total Cash Receipts** | 4,484 | 33,858 | 22,465 | (23,632) | 24,727 | 74,136 | 36,146 | 1,742 | 173,925 |
| **Cost of Goods Sold** | | | | | | | | | |
| Repairs & Warranty Work | | 754 | 1,465 | 650 | 1,070 | 670 | 184 | | 4,629 |
| Delivery Expense | | | | | | | | | |
| Freight In | 750 | 1,023 | 2,270 | 2,181 | 300 | | | | 6,707 |
| Merchandise Purchases | 4,261 | 31,891 | 7,095 | 4,707 | 34,647 | 40,068 | 23,825 | 995 | 147,490 |
| **Total COGS** | 5,011 | 33,669 | 10,850 | 7,538 | 36,017 | 40,738 | 24,009 | 995 | 158,826 |
| **Gross Profit** | (528) | 190 | 11,615 | (31,170) | (11,290) | 33,397 | 12,137 | 747 | 15,099 |
| **Disbursements:** | | | | | | | | | |
| Salaries - Sales | 5,391 | 655 | 1,200 | 1,000 | 400 | 5,250 | 1,608 | | 14,504 |
| Supplies | | 840 | | | 300 | | 87 | | 387 |
| Commission Expense | 645 | 2,499 | 1,855 | | | | | | 4,340 |
| Bank Service Charges | 3,445 | 1,800 | 1,956 | 1,200 | 1,402 | 1,680 | 1,138 | | 14,814 |
| Casual Labor | 600 | 364 | 870 | 458 | 1,300 | | 304 | | 4,574 |
| General Liability Insurance | | | | | | | | | 1,426 |
| Worker's Comp Insurance | | | | | | | | | |
| Office Expense | 97 | 5,483 | 103 | 77 | 968 | 100 | 971 | | 2,131 |
| Payroll Expenses | | | | | | | 423 | | |
| Legal & Accounting | | | | | | | | | 8,069 |
| Rent Expense | 720 | 2,808 | 169 | 4,275 | | 2,125 | 2,500 | | 15,989 |
| Repairs and Maintenance | | | | 51 | | 2,000 | | | 1,574 |
| Telephone Expense | 557 | 121 | 110 | 3,451 | 7,735 | 390 | 1,184 | | 10,262 |
| Uncategorized Expenses | | | | 1,750 | 2,800 | 646 | | | 1,860 |
| Utilities | | | | 745 | | | | | 3,172 |
| Warehouse Expense | | | 2,306 | | | | | | |
| Hire Cash Disbursements | 9,596 | 5,146 | 16,812 | 841 | 22,077 | 16,081 | 19,930 | 1,495 | 89,483 |
| **Total Disbursements** | 20,951 | 19,717 | 25,179 | 13,846 | 35,981 | 27,272 | 28,145 | 1,495 | 173,586 |
| **Net Cash Receipts & Disbursements** | (21,479) | (19,527) | (13,564) | (45,016) | (48,271) | 6,126 | (16,008) | 748 | (158,487) |

# EXHIBIT D

This is a projected balance sheet (by month, year 2010). Figures are best-effort readings from a rotated, low-quality scan.

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | |
| Cash | 1,750 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Account Receivable | 42,500 | 42,500 | 42,500 | 32,500 | 22,500 | 12,500 | — | — | — | — | — | — |
| Prepaid Insurance | 2,940 | 2,520 | 2,100 | 1,680 | 1,260 | 840 | 420 | — | — | — | — | — |
| Insurance Claim Receivable | 1,260 | — | — | — | — | — | — | — | — | — | — | — |
| Inventory | 284,260 | 259,099 | 276,947 | 294,259 | 393,500 | 423,079 | 417,291 | 404,774 | 397,333 | 389,485 | 390,027 | 356,885 |
| Inventory Orders | 46,330 | 117,237 | 92,400 | 75,900 | 66,000 | 46,200 | 56,100 | 66,000 | 66,000 | 66,000 | 33,000 | 33,000 |
| Accounts Receivable-Credit Card Deposits | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| **Total Current Assets** | 497,760 | 556,356 | 548,947 | 539,338 | 518,260 | 497,619 | 488,811 | 485,774 | 482,953 | 474,665 | 441,807 | 418,245 |
| Furniture and Equipment | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 | 5,415 |
| Security Deposits Asset | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 | 2,248 |
| **Total Assets** | 505,443 | 564,019 | 556,610 | 547,001 | 525,923 | 505,282 | 496,474 | 493,437 | 490,616 | 482,348 | 449,470 | 425,908 |
| **Liabilities** | | | | | | | | | | | | |
| **Post Petition Liabilities** | | | | | | | | | | | | |
| Accounts Payable | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 | 4,481 |
| Professional Fees | 7,000 | 10,500 | 10,500 | 10,500 | — | — | — | — | — | — | — | — |
| Customer Deposits | 37,031 | 91,550 | 73,920 | 60,720 | 52,800 | 36,950 | 44,880 | 52,800 | 52,800 | 52,800 | 26,400 | 26,400 |
| Commissions Payable | 2,625 | 7,125 | 9,705 | 9,240 | 7,590 | 6,600 | 4,620 | 5,610 | 6,600 | 6,600 | 6,500 | 3,300 |
| Taxes Payable | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total Post Petition Liabilities** | 53,137 | 115,656 | 100,606 | 86,941 | 66,871 | 50,041 | 55,981 | 64,891 | 65,881 | 65,881 | 39,481 | 36,181 |
| **Pre-Petition Secured Liabilities** | | | | | | | | | | | | |
| Merchants Capital | 56,650 | 53,150 | 49,650 | 46,150 | 42,650 | 39,150 | 35,650 | 32,150 | 28,650 | 25,150 | 21,650 | 18,150 |
| All Other Secured Liab Items | 44,041 | 44,041 | 44,041 | 42,129 | 40,835 | 39,541 | 38,247 | 36,953 | 35,659 | 34,365 | 33,071 | 31,777 |
| **Total Secured Liabilities** | 100,691 | 97,191 | 93,691 | 88,279 | 83,485 | 78,691 | 73,897 | 69,103 | 64,309 | 59,515 | 54,721 | 49,927 |
| **Pre-Petition Liabilities** | | | | | | | | | | | | |
| Taxes Payable | 79,145 | 79,145 | 79,145 | 77,373 | 75,600 | 73,828 | 72,055 | 70,283 | 68,510 | 66,738 | 64,965 | 63,193 |
| Customer Deposits | 84,505 | 86,721 | 78,837 | 70,953 | 63,069 | 55,185 | 47,301 | 39,417 | 31,533 | 23,649 | 15,765 | 7,881 |
| Unsecured Debt | 44,581 | 44,581 | 44,581 | 44,581 | 44,581 | 44,581 | 44,581 | 44,581 | 44,581 | 40,123 | 40,123 | 40,123 |
| **Total Pre-Petition Liabilities** | 218,330 | 210,446 | 202,562 | 192,906 | 183,250 | 173,593 | 163,937 | 154,280 | 144,624 | 130,509 | 120,853 | 111,196 |
| Taxes & Other Priority Liabilities | | | | | | | | | | | | |
| Unsecured Liabilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| **Total Liabilities** | | | | | | | | | | | | |
| **Equity** | | | | | | | | | | | | |
| Owner's Capital | 888,815 | 907,841 | 926,965 | 940,407 | 951,047 | 950,748 | 953,252 | 963,892 | 974,533 | 982,505 | 982,505 | 976,699 |
| Retained Earnings-Pre Petition | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) | (749,090) |
| Retained Earnings-Post Petition | 133,285 | 159,751 | 178,875 | 192,317 | 202,357 | 202,659 | 205,162 | 215,802 | 226,443 | 234,415 | 234,415 | 228,603 |
| **Total Equity** | | | | | | | | | | | | |
| **TOTAL LIABILITY** Retained Earnings-Post Petition | 505,443 | 564,019 | 556,610 | 547,001 | 525,923 | 505,282 | 496,474 | 493,437 | 490,616 | 482,348 | 449,470 | 425,908 |

800/500 d

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | |
| Incoming Freight | 119 | 324 | 442 | 421 | 346 | 300 | 210 | 255 | 300 | 300 | 300 | 150 | 3,469 |
| Delivery Charges | 647 | 1,755 | 2,392 | 2,277 | 1,871 | 1,627 | 1,139 | 1,383 | 1,627 | 1,627 | 1,627 | 813 | 18,783 |
| Merchandise Sales | 35,000 | 95,000 | 129,400 | 123,200 | 101,200 | 88,000 | 61,600 | 74,800 | 88,000 | 88,000 | 88,000 | 44,000 | 1,016,200 |
| Sales Discounts | (129) | (349) | (475) | (453) | (372) | (323) | (226) | (275) | (323) | (323) | (323) | (162) | (3,733) |
| **Total Revenue** | 35,638 | 96,731 | 131,758 | 125,445 | 103,044 | 89,604 | 62,723 | 76,163 | 89,604 | 89,604 | 89,604 | 44,802 | 1,034,719 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| Repairs & Warranty Work | 257 | 698 | 951 | 906 | 744 | 647 | 453 | 550 | 647 | 647 | 647 | 323 | 7,471 |
| Delivery Expense | 323 | 878 | 1,196 | 1,139 | 935 | 813 | 569 | 691 | 813 | 813 | 813 | 407 | 9,392 |
| Freight In | 151 | 409 | 557 | 530 | 436 | 379 | 265 | 322 | 379 | 379 | 379 | 189 | 4,376 |
| Merchandise Purchases | 17,500 | 47,500 | 64,700 | 61,600 | 50,600 | 44,000 | 30,800 | 37,400 | 44,000 | 44,000 | 44,000 | 22,000 | 508,100 |
| **Total COGS** | 18,231 | 49,485 | 67,404 | 64,175 | 52,715 | 45,839 | 32,087 | 38,963 | 45,839 | 45,839 | 45,839 | 22,920 | 529,339 |
| **Gross Profit** | 17,406 | 47,246 | 64,354 | 61,270 | 50,329 | 43,765 | 30,635 | 37,200 | 43,765 | 43,765 | 43,765 | 21,882 | 505,381 |
| **Expense** | | | | | | | | | | | | | |
| Salaries – Sales | 8,000 | 8,000 | 10,000 | 8,000 | 10,000 | 8,000 | 8,000 | 10,000 | 8,000 | 8,000 | 10,000 | 6,400 | 102,400 |
| Supplies | 70 | 190 | 259 | 246 | 202 | 176 | 123 | 150 | 176 | 178 | 178 | 88 | 2,032 |
| Commission Expense | 2,625 | 7,125 | 9,705 | 9,240 | 7,590 | 6,600 | 4,620 | 5,610 | 6,600 | 6,600 | 6,600 | 3,300 | 78,215 |
| Payroll Processing Fees | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 660 |
| Bank Service Charges | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Advertising & Promotion | | | | | | | | | | | | | |
| General Liability Insurance | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 5,040 |
| Worker's Comp Insurance | 108 | 108 | 132 | 108 | 132 | 106 | 108 | 132 | 106 | 106 | 132 | 88 | 1,355 |
| Office Supplies | 210 | 570 | 776 | 739 | 607 | 528 | 370 | 449 | 528 | 528 | 528 | 264 | 6,097 |
| Payroll Expenses | | | | | | | | | | | | | |
| Professional Fees | 965 | 965 | 1,206 | 965 | 1,206 | 965 | 965 | 1,206 | 965 | 965 | 1,206 | 804 | 12,382 |
| CEO | 8,600 | 8,600 | 8,600 | 8,600 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 66,400 |
| Legal | 3,500 | 3,500 | 3,500 | 3,500 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 30,000 |
| Rent Expense | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 5,200 | 62,400 |
| Repairs and Maintenance | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Telephone Expense | 825 | 825 | 825 | 825 | 825 | 825 | 825 | 825 | 825 | 825 | 825 | 825 | 9,900 |
| Unallocated Expenses | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 600 |
| Utilities | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 10,800 |
| Warehouse Expense | 2,700 | 2,700 | 3,100 | 2,700 | 3,100 | 2,700 | 2,700 | 3,100 | 2,700 | 2,700 | 3,100 | 2,700 | 34,000 |
| **Total Expense** | 34,825 | 39,805 | 45,328 | 42,146 | 38,888 | 33,124 | 30,933 | 34,696 | 33,124 | 33,124 | 35,792 | 27,684 | 427,481 |
| **Income from Operations** | (17,419) | 7,440 | 19,026 | 19,124 | 13,442 | 10,640 | (298) | 2,503 | 10,640 | 10,640 | 7,973 | (5,812) | 77,899 |
| Extraordinary Item | | | | | | | | | | | | | |
| Foregiveness of Debt | 802,053 | | | | | | | | | | | | 992,053 |
| **Net Income** | 844,654 | 7,440 | 19,026 | 19,124 | 13,442 | 10,640 | (298) | 2,503 | 10,640 | 10,640 | 7,973 | (5,812) | 979,932 |
| | | | | | | | | | | | | | |
| **Required Payments:** | | | | | | | | | | | | | |
| Oakland County | | | | 618 | | | | | | | | | 618 |
| St of Michigan | | | | 1,293 | 1,293 | 1,293 | 1,293 | 1,293 | 1,293 | 1,293 | 1,293 | 1,293 | 11,637 |
| St of Michigan | | | | 1,153 | 1,153 | 1,153 | 1,153 | 1,153 | 1,153 | 1,153 | 1,153 | 1,153 | 10,375 |
| IRS | | | | 619 | 619 | 619 | 619 | 619 | 619 | 619 | 619 | 619 | 5,575 |
| Unsecured | | | | | | | | | | 4,458 | | | 4,458 |
| Merchants Capital | | | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 31,500 |
| **Total Required payments** | | | | 7,183 | 6,565 | 6,565 | 6,565 | 6,565 | 6,565 | 11,023 | 6,565 | 6,565 | 64,163 |
| Income from Operations | (17,419) | 7,440 | 19,026 | 11,941 | 6,878 | 4,075 | (6,863) | (4,062) | 4,075 | (383) | 1,407 | (12,377) | 31,500 |
| Non Cash Expense | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | 420 | |
| Cash Flow | (16,999) | 7,860 | 19,446 | 12,361 | 7,286 | 4,495 | (6,443) | (3,642) | 4,495 | 37 | 1,827 | (11,957) | |
| **Running Cash Flow** | (16,999) | (9,139) | 10,307 | 22,668 | 28,965 | 34,460 | 28,016 | 24,375 | 28,870 | 28,906 | 30,734 | 18,777 | |

# Italmoda Projections – 2011 -2014

| | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current Assets | | | | |
| Cash | 15,000 | 15,000 | 15,000 | 15,000 |
| Prepaid Insurance | 3,360 | 3,360 | 3,360 | 3,360 |
| Inventory | 358,392 | 422,914 | 489,437 | 565,512 |
| Inventory Orders | 56,230 | 56,230 | 56,230 | 56,230 |
| Accounts Receivable-Credit Card Deposits | - | - | - | - |
| Total Current Assets | 432,982 | 497,504 | 564,027 | 640,102 |
| | | | | |
| Furniture and Equipment | 5,415 | 5,415 | 5,415 | 5,415 |
| Security Deposits Asset | 2,248 | 2,248 | 2,248 | 2,248 |
| **Total Assets** | 440,645 | 505,167 | 571,690 | 647,765 |
| | | | | |
| **Liabilities** | | | | |
| Post Petition Liabilities | | | | |
| Accounts Payable | 4,481 | 4,481 | 4,481 | 4,481 |
| Customer Deposits | 42,173 | 42,173 | 42,173 | 42,173 |
| Taxes Payable | 2,000 | 2,000 | 2,000 | 2,000 |
| Total Post Petition Liabilities | 48,654 | 48,654 | 48,654 | 48,654 |
| Secured Liabilities | | | | |
| Meerchants Capital | - | | | |
| All Other Secured Liabilities | 16,261 | 1,003 | - | - |
| Total Secured Liabilities | 16,261 | 1,003 | - | - |
| Pre-Petition Liabilities | | | | |
| Taxes & Other Priority Liabilit | 41,926 | 44,525 | 22,255 | (0) |
| Unsecured Liabilities | 31,207 | 22,291 | 13,375 | 0 |
| Total Pre-Petition Liabilities | 73,133 | 66,816 | 35,630 | 0 |
| **Total Liabilities** | | | | |
| **Equity** | | | | |
| Owner's Capital | 1,000 | 1,000 | 1,000 | 1,000 |
| Retained Earnings-Pre Petition | (749,090) | (749,090) | (749,090) | (749,090) |
| Retained Earnings-Post Petition | 1,050,687 | 1,136,784 | 1,235,496 | 1,347,201 |
| **Total Equity** | 302,597 | 388,694 | 487,406 | 599,111 |
| | 440,645 | 505,167 | 571,690 | 647,765 |

# Italmoda Projections - 2011 -2014

| | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| **Revenue** | | | | |
| Incoming Freight | 3,713 | 3,825 | 3,940 | 4,058 |
| Delivery Charges | 20,104 | 20,707 | 21,329 | 21,969 |
| Merchandise Sales | 1,087,680 | 1,120,310 | 1,153,920 | 1,188,537 |
| Sales Discounts | (3,996) | (4,116) | (4,239) | (4,366) |
| **Total Revenue** | 1,107,502 | 1,140,727 | 1,174,949 | 1,210,197 |
| **Cost of Goods Sold** | | | | |
| Repairs & Warranty Work | 7,997 | 8,237 | 8,484 | 8,738 |
| Delivery Expense | 10,052 | 10,354 | 10,664 | 10,984 |
| Freight In | 4,683 | 4,824 | 4,969 | 5,118 |
| Merchandise Purchases | 543,840 | 560,155 | 576,960 | 594,269 |
| **Total COGS** | 566,572 | 583,570 | 601,077 | 619,109 |
| | | | | |
| **Gross Profit** | 540,930 | 557,157 | 573,872 | 591,088 |
| **Expense** | | | | |
| Salaries – Sales | 123,200 | 123,200 | 123,200 | 123,200 |
| Supplies | 2,032 | 2,241 | 2,308 | 2,377 |
| Commission Expense | 108,768 | 112,031 | 115,392 | 118,854 |
| Payroll Processing Fees | 660 | 660 | 660 | 660 |
| Bank Service Charges | 6,000 | 6,000 | 6,000 | 6,000 |
| Advertising & Promotion | 21,754 | 22,406 | 23,078 | 23,771 |
| General Liability Insurance | 5,040 | 5,040 | 5,040 | 5,040 |
| Worker's Comp Insurance | 1,584 | 1,584 | 1,584 | 1,584 |
| Office Supplies | 6,526 | 6,526 | 6,526 | 6,526 |
| Payroll Expenses | 14,472 | 14,472 | 14,472 | 14,472 |
| Professional Fees | | | | |
| Accounting | 48,000 | 48,000 | 48,000 | 48,000 |
| Legal | 10,000 | 10,000 | 10,000 | 10,000 |
| Rent Expense | 62,400 | 62,400 | 62,400 | 62,400 |
| Repairs and Maintenance | 1,200 | 1,200 | 1,200 | 1,200 |
| Telephone Expense | 9,900 | 9,900 | 9,900 | 9,900 |
| Uncategorized Expenses | 600 | 600 | 600 | 600 |
| Utilities | 10,800 | 10,800 | 10,800 | 10,800 |
| Warehouse Expense | 34,000 | 34,000 | 34,000 | 34,000 |
| **Total Expense** | 488,936 | 471,060 | 475,160 | 479,384 |
| **Net Income** | 73,993 | 86,098 | 98,712 | 111,705 |
| | | | | |
| **Required Payments:** | | | | |
| Oakland County | - | - | | |
| St of Michigan | 15,516 | 15,258 | 1,003 | |
| St of Michigan | 13,833 | 13,833 | 13,833 | 14,822 |
| IRS | 7,434 | 7,434 | 7,434 | 7,434 |
| Unsecured | 8,916 | 8,916 | 8,916 | 13,374 |
| Merchants Capital | 18,500 | - | - | - |
| **Total Required payments** | 64,199 | 45,441 | 31,186 | 35,630 |
| **Net Income** | 9,795 | 40,657 | 67,526 | 76,075 |
| Non Cash Expenses | 5,040 | 5,040 | 5,040 | 5,040 |
| **Cash Flow** | 14,835 | 45,697 | 72,566 | 81,115 |